FILED
2021 Dec-11  PM 12:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BWW, Inc., *doing business as* SERVPRO of Birmingham, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:21-cv-00470-CLM |
| | ) | |
| JAMES BRIGHAM, etc., et al.; | ) | |
| | ) | |
| Defendants. | ) | |

**CORRECTED DEFENDANTS' SUPPLEMENT TO MOTION
TO DISMISS AND RESPONSE TO PLAINTIFF'S CLAIM IN
THE BOARD OF ADJUSTMENT[1]**

James Brigham, David Thompson, and President Donald C. Killingsworth,

current and former Jacksonville State University officers, supplement their motion

to dismiss (Docs 8 and 9) and respond to SERVPRO's notice of filing a claim against

JSU with the Alabama Board of Adjustment. (Doc 25.) SERVPRO's Board of

Adjustment claim proves this matter belongs in the Board of Adjustment, that this

Court lacks jurisdiction, and that this lawsuit should be dismissed.

## I.   INTRODUCTION

---

[1] This Supplement to the Motion to Dismiss and Response to the Plaintiff's Claim in the Board of Adjustment was filed on December 10, 2021, without the first page. This Corrected Supplement to the Motion to Dismiss and Response to the Plaintiff's Claim in the Board of Adjustment has no changes except it contains the first page.

Although SERVPRO's complaint states an array of claims, the gist is simple: this case is about SERVPRO's attempts to collect disputed amounts under a contract. As discussed in the motion to dismiss (Docs 8 and 9), no matter how it is pleaded, the exclusive jurisdiction for such claims is in the Board of Adjustment. SERVPRO has conceded implicitly that the Board of Adjustment has exclusive jurisdiction because it filed a claim with the Board of Adjustment seeking the same relief sought in this Court. (*See* Ex. A, SERVPRO Claim against JSU in the Board of Adjustment.) But SERVPRO wants to still proceed here. It cannot. This case should be dismissed. The claims should be heard in the exclusive forum: the Board of Adjustment.

## II.    BACKGROUND

This lawsuit arises out of work allegedly performed by SERVPRO repairing damage done to the JSU campus after a March 2018 tornado. Under a contract between JSU and SERVPRO, JSU paid SERVPRO about $50,000,000 for work performed. JSU's source of funding for most of these payments was the State Insurance Fund. As SERVPRO's invoices mounted, the State Insurance Fund ceased funding. On information and belief, the State Insurance Fund's refusal to fund these payments arose out of an audit of SERVPRO's billings raising significant concern that SERVPRO had overbilled.

JSU notified SERVPRO that it would not pay additional invoices until: (a) the State of Alabama determined that SERVPRO's charges were legitimate and properly

subject to reimbursement; and (b) an FBI's investigation into SERVPRO's alleged overbilling was concluded.

SERVPRO commenced this lawsuit suing JSU's president (in his official capacity), vice president for finance (in his official and individual capacity), and facilities director (in his official and individual capacity). SERVPRO tried to escape sovereign immunity and to circumvent the Board of Adjustment's exclusive jurisdiction by asserting that individual JSU employees are responsible for JSU's alleged $12,000,000 contractual obligation to SERVPRO for restoration work. JSU moved to dismiss this federal court lawsuit for multiple reasons, including sovereign immunity and the Board of Adjustment's exclusive jurisdiction. (Docs 8 and 9).

Although this lawsuit remains pending, SERVPRO filed a claim with the Board of Adjustment alleging the same misconduct and based on the same facts alleged in this lawsuit's complaint. (Doc 24 and Ex. A, SERVPRO Claim against JSU in the Board of Adjustment.) SERVPRO's Board of Adjustment claim against JSU is telling:

1. SERVPRO's counsel's cover letter states that "**elements of the above-captioned claim pertain to matters currently pending in the case of *BWW, Inc., doing business as SERVPRO of Birmingham v. James Brigham*, etc. et al.**, Civil Action No.: 1:21-cv-00470-CLM, in the United States Court for Northern Division [sic] of Alabama."

2. SERVPRO's claim states: "**The matters pertaining to the same facts or some of them pertain to pending**

> **litigation in the case of *BWW, Inc., doing business as SERVPRO of Birmingham v. James Brigham*, *etc. et al.*,** Civil Action No.: 1:21-cv-00470-CLM, in the United States Court for Northern District of Alabama."
>
> 3. SERVPRO's "Statement of Facts" describes and incorporates the restoration contract between SERVPRO and JSU, and then alleges that JSU stopped paying SERVPRO's invoices under the contract.
>
> 4. SERVPRO's claim mentions that JSU informed SERVPRO that "no further payments would be made until the completion of an investigation."
>
> 5. SERVPRO seeks $20,476,584.13 from JSU, including interest, under the restoration contract.

In its Board of Adjustment claim, SERVPRO tries to distinguish this lawsuit's complaint by asserting this lawsuit is about seeking declarations that certain Alabama laws are unconstitutional, but the argument is unavailing and misleading. In the same paragraph, SERVPRO admits that this lawsuit is about "judicial enforcement of civil obligations for goods and services provided to and accepted by them ["JSU and/or other agencies"] under the terms of a valid and otherwise enforceable agreement."

Otherwise stated, SERVPRO admits in the Board of Adjustment claim that it is seeking to recover under the JSU-SERVPRO contract in both the Board of Adjustment and this federal court. SERVPRO's admission is confirmation that this case should be dismissed.

## III.   POINTS AND AUTHORITIES

A. <u>SERVPRO has admitted these claims belong in the Board of Adjustment by filing its claim there</u>.

The Board of Adjustment has exclusive jurisdiction over breach of contract claims against state agencies, including state universities. Ala. Code §§ 41-9-60 and 41-9-62(a)(4) (1975). If a claim falls under the Board of Adjustment's jurisdiction, courts lack subject-matter jurisdiction over the claim. *Vaughan v. Sibley*, 709 So. 2d 482, 486 (Ala. Civ. App. 1997) ("The Board of Adjustments has exclusive jurisdiction over a contract claim against a state university.")

In SERVPRO's complaint, every claim, no matter how it is stated, seeks the same thing: to collect the amount SERVPRO says it is owed. SERVPRO argued vigorously in opposition to dismissal that the Board of Adjustment does not have exclusive jurisdiction and is not the proper forum (Doc 16, pp. 23 and 24), yet now it has filed a claim in that forum.

SERVPRO cannot have it both ways. SERVPRO's claim must be heard in the Board of Adjustment. SERVPRO's attempt to hedge its bet to avoid the defense of the statute of limitations in the Board of Adjustment is futile and an admission its arguments in federal court are wrong.

B. <u>Federal law forbids SERVPRO from pursuing the same or similar claims simultaneously in two forums</u>.

SERVPRO has indicated its belief that this Court has jurisdiction over some issues because it seeks a declaration of its rights. But "[t]he Supreme Court has

5

'repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant.'" *Catlin Ins. Co. v. Dixie Air Servs.*, 2014 U.S. Dist. LEXIS 93262, \*5 (N.D. Ala. March 14, 2014), *quoting Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). "As the Eleventh Circuit has observed, the Act 'only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so.'" *Id.*, *quoting Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). A "district court has discretion to 'decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties.'" *Id.*, *quoting Ven-Fuel, Inc. v. Dept. of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982).

The Eleventh Circuit has stated a non-exhaustive list of "guideposts" for the Court to consider when deciding to exercise jurisdiction over an action when a party seeks a declaration of its rights:

> (i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action amounts to procedural fencing; (v) whether a ruling in the federal action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any)

between the underlying issues and state law/policy, and
whether federal common or statutory law requires
resolution of the declaratory action.

*Catlin Ins. Co. v. Dixie Air Servs.*, 2014 U.S. Dist. LEXIS 93262, *5-6, *quoting*

*Ameritas*, 411 F.3d at 1331.

Here, the Board of Adjustments may determine the rights of the parties on the

contract and claims at issue. The proper forum to resolve the issues between JSU

and SERVPRO is not this Court.[2]

## IV.   CONCLUSION

Defendants have never said that SERVPRO was without a remedy or forum.

This Court should see SERVPRO's filing in the Board of Adjustment for what it is:

an admission that it can, and should, seek its relief in that forum. This lawsuit should

be dismissed.

Respectfully submitted,

Wayne Morse
Attorney for Defendants

---

[2] Although the Alabama abatement statute is not binding on this Court, its policy shows that
SERVPRO should not be allowed to proceed in this Court with the Board of Adjustment claim
now pending. *See* Ala. Code § 6-5-440 (1975) ("No plaintiff is entitled to prosecute two actions in
the courts of this state at the same time for the same cause and against the same party.")

7

WALDREP STEWART & KENDRICK, LLP
2850 19th Street South
Suite 370
Birmingham, AL 35209
Telephone: (205) 327-8325
Email: morse@wskllc.com

## **CERTIFICATE OF SERVICE**

I certify that on December 11, 2021, I served a copy of the foregoing upon the following counsel of record via the Court's electronic filing system, email or U.S. mail:

Barry W. Hair
Brad J. Smith
Clark, Hair & Smith, P.C.
1000 Urban Center Drive, Suite 125
Birmingham, AL  35242

Wayne Morse
Attorney for Defendants

EXHIBIT A

CH Clark, Hair
HS & Smith, P.C.

Barry W. Hair
Attorney at Law
bhair@chslaw.com

1000 Urban Center Drive, Suite 125

Birmingham, Alabama 35242

(205) 397.2900 · fax (205) 397.2901

www.chslaw.com

December 1, 2021

Alabama State Board of Adjustment
Alabama State Capitol
600 Dexter Avenue, Suite E-302
Montgomery, AL 36104

      RE:    BWW, Inc. dba ServPro of Birmingham, an Alabama corporation v. Jacksonville
           State University, and other agencies and departments of the State of Alabama

Dear Sir or Madam:

Please note that elements of the above-captioned claim pertain to matters currently pending in the case of *BWW, Inc., doing business as SERVPRO of Birmingham v. James Brigham, etc. et al.*, Civil Action No.: 1:21-cv-00470-CLM, in the United States District Court for the Northern Division of Alabama: Eastern Division, and involve the constitutionality and validity of laws, rules or regulations as applied to and by agencies of the State of Alabama, and that Board of Adjustment Rules 14(i) and 22(b) are applicable. It is my understanding that under the Board rules, consideration of this claim will be suspended pending resolution of pertinent litigation. If my understanding is incorrect in any way, please let me know.

Sincerely yours,

*Barry W. Hair*

Barry W. Hair

BWH/ds

6. Sign the claim form in the presence of a Notary Public, print your name and have the notary complete the verification section of the claim form.

Fax:(334)242-2008

## ALABAMA STATE BOARD OF ADJUSTMENT VENDOR'S CLAIM FOR PAYMENT

| See Page 1 of this form for instructions. Each number on the form corresponds with numbers on instruction sheets. Read all instructions carefully to ensure your claim is not returned for additional supporting documentation. See INSTRUCTIONS for mailing or hand delivering this form to the Board of Adjustment (Page 1). | DO NOT WRITE IN THIS SPACE. FOR BOARD OF ADJUSTMENT USE ONLY.<br><br>Claim No.: 244-20220097 |
| --- | --- |

1. Enter the Name of the Department or Agency of the State of Alabama against which you are making this claim:

- **Jacksonville State University (JSU)**

And to the extent that they have assumed or exercised authority over JSU's satisfaction of its obligations to ServPro described herein, or have custody, control, or distribution authority over funds necessary to satisfy those obligations, other agencies, departments, or divisions of the State of Alabama including the following:

- **Alabama Department of Finance**
- **Alabama State Insurance Fund**
- **Alabama Division of Risk Management**
- **Alabama Emergency Management Agency**



**PLEASE TAKE NOTE:**

- For purposes of the Board's jurisdiction as defined by Ala. Code § 41-9-62, and for the application of Rule 22(b) of the Rules of the Alabama Board of Adjustment, Rev. August 24, 2021 which provides in pertinent part: "[n]o claim will be scheduled for hearing if litigation pertaining to the same facts is pending in any court." The matters pertaining to these facts or some of them pertain to pending litigation in the case of *BWW, Inc., doing business as SERVPRO of Birmingham v. James Brigham, etc. et al.*, Civil Action No.: 1:21-cv-00470-CLM, in the United States District Court for the Northern Division of Alabama: Eastern Division.

- This litigation includes claims under both federal and Alabama law for Servpro's work and services against state officials or former officials in their individual capacities for legal relief, claims against state officials or former officials in their official capacities for equitable relief, claims for both legal and equitable relief against private insurers, reinsurers, and other private individuals or entities that may be discovered to be responsible for ServPro's claimed injuries, and that are thus outside the jurisdictional contours of this Board.

- For purposes of Rule 14(i) of the Rules of the Alabama Board of Adjustment which states:

> (i) <u>Claim involving Constitutionality of a law, rule or regulation.</u> If the claim is based upon the alleged unconstitutionality or invalidity of any law, rule or regulation, it will not be considered by the Board of Adjustment until the constitutionality or the validity of such law, rule or regulation has become definitely determined by the Alabama Appellate Courts.

To the extent that JSU and/or other agencies, departments of the State of Alabama or officials thereof contend that they are insulated from judicial enforcement of civil obligations for goods and services provided to and accepted by them under the terms of a valid and otherwise enforceable agreement, ServPro asserts that any state law, rule or regulation purporting to provide such insulation violates the Constitution and laws both of the United States and the State of Alabama.

2. Enter your Name, Mailing Address, E-mail Address, Contact Phone Number(s) and Social Security # or FEIN:

Name:  **BWW, Inc. dba ServPro of Birmingham, an Alabama corporation.**

Mailing Address:      2000 Huntley Parkway, Pelham, Alabama 35124

E-Mail Address:       <u>brwilson@servproofbirmingham.com</u>

Contact Telephone Numbers:

FEIN:                        63-1127232

Attention:                Brady Wilson

———————————————————————————

Street Address or P.O. Box: 2000 Huntley Parkway

City, State, Zip Code: Pelham, Alabama 35124

E-mail Address: brwilson@servproofbirmingham.com

Home Telephone No.: N/A     Office Telephone No.: 205/252-8110

Cellular Telephone No.: 205/542-1132      Fax No.: 205/664-6774

Claimant's Last Four Digits of Social Security No. or last four digits of Business FEIN:

XXX-XX-_____ or XX-XXX_____

Claimant's Attorney: (NOTE: If an attorney is listed, all correspondence will be with the attorney only.) Attorney Name:

Barry W. Hair, Esq., Clark, Hair & Smith, P.C.

Street Address or P.O. Box:

1000 Urban Center Drive, Suite 125

City, State, Zip Code:

Birmingham, Alabama 35242

E-mail Address: bhair@chslaw.com

Office Telephone No.: 205/397-2900 Fax No.: 205/727-9430

3. Facts of Claim:

A. Date account was due to be paid according to payment terms:

Dec. 3, 2020 (See description of JSU's unilateral imposition of new conditions to the performance if its payment obligations, below. See also, Exhibit C)

B.  Last date service was provided, or goods were delivered (mm/dd/year): last charge
    represented on invoices 08/16/2019.  As described below, and consistent with ordinary
    business practices ServPro participated in post-performance reviews, adjustments, and
    clarifications until JSU's renunciation of its obligations under the contract on 12/3/2020.

C.  Statement of Facts:

The JSU campus was devastated by a tornado on March 19, 2018.  On March 20, 2018, JSU
selected ServPro of Birmingham to coordinate and conduct most of the restoration and
reconstruction work necessary to return the campus to a functioning educational institution.
Under terms proposed and accepted by JSU, ServPro performed its obligations, restored the
campus and its facilities, and made it possible for JSU to reopen for the Fall Semester, 2018.
The Terms of the obligations of JSU and ServPro are described in the Disaster Recovery
Authorization and Service Contract, executed by an appropriately designated official of JSU and
by ServPro (the Contract). [A copy of the Contract is attached as Exhibit A]

ServPro fulfilled each of its obligations under the Contract.  In the early stages of ServPro's
work to restore its campus JSU paid the full amount of ServPro's invoices after having been
through the process described, above.  Later, some invoices were paid in full (less the "hold
back" amounts) and others only partially.  In the final stages of work under the Contract, JSU's
payments stopped altogether.  Relying on the repeated assurances of JSU officials that full
payment would be made, ServPro continued with the performance of its work under the
Contract.  ServPro continued to engage with representatives of JSU, its insurers, and others
during the process of clarification, adjusting, documentation and auditing of the work it had
performed, and the invoices submitted.

As provided by the Contract and in keeping with commonly accepted industry practice, JSU's
payment obligations were incurred upon the performance of components of the required work,
the acceptance of that work by JSU, the submission of invoices and any necessary
documentation by ServPro to JSU. As in ordinary business practices and under the course of
conduct between ServPro and JSU, ServPro then participated in post-performance reviews and
clarifications with JSU, adjusters, other involved agencies and insurers in the resolution any
questions or appropriate adjustments to the submitted invoices.  Under the course of conduct
between ServPro and JSU and consistent with industry practice for work of this magnitude, JSU
retained or "held back" a portion (ranging from 25% to 10%) of each invoice payment pending
acceptance of the work by JSU, reviews of the work and submitted invoices, and necessary and
appropriate adjustments. JSU [or other agency as described above] has retained custody of these
the funds retained pending final adjustment.

JSU, in collaboration with or compelled by the Alabama Department of Finance, the State
Insurance Fund, Division of Risk Management, Alabama Emergency Management Agency
and/or other state offices and the responsible insurers and re-insurers, continued to request
clarification, documentation or explanation of ServPro's unpaid invoices.  JSU sought payment
of Servpro's invoices with those entities and/or agencies.  ServPro cooperated fully in this
review process, clarified the basis of invoices, and adjusted invoices as appropriate.  To other
agencies of the State of Alabama, JSU's counsel acknowledged and recognized that:

- Restoring its campus which enabled JSU to reopen for the Fall semester, 2018 was a "Herculean task" by Servpro.
- That ServPro's work to attain that essential goal was excellent.
- That ServPro "did an outstanding job getting JSU's campus in a position to open for Fall classes."
- That ServPro's work and invoices therefore were consistently and actively reviewed by JSU and by the State Insurance Fund (SIF). That its invoices were reviewed and approved by a consultant hired by SIF
- That JSU, relying on reimbursements authorized by SIF from sources including private insurers and reinsurers, was itself injured by SIF's delays and refusals to participate effectively in the review, adjustment, and resolution process for the remaining payments due to ServPro. (September 24, 2019, letter from JSU Counsel, Oscar Price, to State of Alabama Risk Manager, Max Graham. Attached as Exhibit B).

In an abrupt reversal of position, on Dec. 3, 2020, JSU, through other counsel notified ServPro that no further payments would be made until the completion of an investigation and until "...JSU is assured by the State of Alabama that any further payments to ServPro will be reimbursed". [JSU General Counsel letter to ServPro, Dec. 3, 2020, thus effectively making any further obligations to pay ServPro for the balance owed on the Contract dependent upon action by third parties. [Attached as Exhibit C]

BOA Vendor Claim Form - 5/24/2016

Claimant's Name: **BWW, Inc. dba ServPro of Birmingham, an Alabama corporation**

4. **GRAND TOTAL AMOUNT FOR THIS CLAIM:**

   Total Unpaid Invoices exclusive of interest:  $10,905,857.91

   Interest Accrued through November 2021:  $9,570,726.22

   Grand Total Due as of November 30, 2021:  $20,476.584.13

   Interest Accrual rate: Prospective interest accrual, December 2021-November 2022:

$3,942,425.20*

*The Disaster Recovery Authorization and Service Contract obligates JSU to pay accrued interest at a rate of 1.5% per month or the maximum interest rate permitted by law, whichever is lesser. The amounts above have been calculated at the 1.5% rate and are subject to adjustment if required by applicable law. The same document obligates JSU to pay costs of collection, including court costs and reasonable attorney's fee. So long as JSU's obligation remains unpaid, no calculation of this amount is possible, however it remains part of the relief requested by this petition.

The Board is requested to include in its award all accrued interest pursuant to the contract terms. not included in the sum above until payment is made, along with the cost and attorney's fee expenses as specified.  Those specific amounts are subject to continuing computation and accrual and cannot be quantified at the time of this filing.

Claims for legal and equitable relief under federal and state law against entities other than JSU and/or persons including officials and/or former officials of JSU in their official or individual capacities, resulting from the matters described in this Claim, and including all issues not within the jurisdiction of this Board, are subject of separate litigation.

Signature of Claimant/Authorized Representative:

_____

Please Print Name

_____Brady Wilson_____

*****************************************************************************

**VERIFICATION STATE OF** _Alabama_____
**COUNTY OF** _Shelby_____

Before me, a Notary Public in and for said state and county, personally appeared the person whose name is signed above who being made known to me and being duly sworn to give true testimony, affirmed that all of the above stated facts are true and correct.

Sworn and subscribed before me this _1st_ day of _December_____, 20_21_ AFFIX SEAL

Signature of Notary Public _Debra Edwards_____     Printed Name

BOA Vendor Claim Form - 5/24/2016

# ALABAMA STATE BOARD OF ADJUSTMENT

## BWW, Inc. d/b/a ServPro of Birmingham

## Exhibit "A"



**Disaster Recovery Authorization
and Service Contract**

The Service Contract (the Contract) is entered into on this 20th day of _____ March _____, 20 18, by and between
Servpro of Birmingham _____ ("Service Provider"), an independently
owned and operated franchise, and _____ Jacksonville State University _____ ("Customer").
Address: _____ 700 Forney Ave _____ City: ___ Jacksonville ___ State: AL Zip: 36265.

1. **Services:** Service Provider hereby agrees to furnish all labor, materials, equipment, and subcontracted items reasonably necessary to complete the work described in the Scope of Work (Exhibit A). Service Provider and Customer may make changes in the Scope of Work by written change order agreed to in writing by both parties. Customer acknowledges that Service Provider is independent of the Customer's insurance company and that only the parties hereto have the authority to enter into this Contract. Service Provider and Customer acknowledge that the property which is the subject of the Scope of Work has been damaged by a fire, flood, or other catastrophe and that, while Service Provider agrees to perform the Scope of Work according to industry standards, cannot guarantee that any of the property will be fully operational or free from defects following completion of work.

2. **Term:** This Contract shall commence on the date signed below and shall continue until the services set forth in the Scope of Work and any applicable change order(s) ("Services") have been completed.

3. **Price:** Work performed hereunder shall be priced according to the Time and Materials Commercial Pricing (Exhibit B), plus any applicable taxes and costs, permits, fees, special licenses, and other reasonably necessary expenses and permitted subcontractors (cumulatively, "Charges"). Customer will make the facility accessible to accommodate Service Provider and take all steps necessary or convenient to enable Service Provider to complete Services. All rates quoted are exclusive of Federal, State and Local Sales or Use taxes and costs associated with any applicable Federal, State or Local approvals, consents, permits, licenses and order incident to performance of the work. Service Provider will bill for and Customer shall pay for all such actual incurred costs. Customer agrees that only the work set forth on Exhibit A will be performed for the agreed pricing on this Contract. Additional work will be billed separately.

   **Invoicing and Payment:** Service Provider shall submit to Customer itemized invoice(s) setting forth the total Charges due. Customer agrees to pay such fees and charges for the Scope of Work in accordance with the following schedule: Bill monthly for prior month.
   Initial draw based upon intial assessment,
   a. $ _____ on or before _____.
   b. $ _____ on or before _____.
   c. The balance of fees and charges for the Scope of Work and change orders shall be paid within thirty (30) days from the Customer's receipt of the final invoice.

   If payments are not received within thirty (30) days, Customer agrees to pay all costs of collections up to and including court costs, reasonable attorney's fees and interest charges at the lesser of 1) 1.5% per month; or 2) the maximum lawful interest rate permitted by applicable law. In the event Customer shall fail to pay any periodic installment payment, such failure shall constitute a breach authorizing Service Provider to cease work without breach pending payment or resolution of any dispute.

4. **Responsibility for Payment:** By signing below, Customer hereby instructs Customer's insurance carrier to pay Service Provider directly for Services, emergency or otherwise, less any deductible actually paid by Customer. Customer shall remain primarily liable and fully responsible for payment and agrees to make such payment in a

Page 1 of 4

timely manner in accordance with the terms of this Contract.  <u>**If for any reason Customer receives a check or draft from insurance company made payable to Customer, Customer agrees to remit payment immediately to Service Provider and hereby assigns to Service Provider the right to any such payment.**</u> Customer agrees to make payment for Charges, regardless of whether Customer or another person or entity is legally responsible for payment or whether Customer is entitled to reimbursement for such costs from some other person or entity or insurance carrier(s).

5.  **General Lien:** Customer agrees that Service Provider shall have a general lien on any and all real and personal property of the Customer and in Customer's possession, custody or control for all claims, Charges or advances incurred by Service Provider generally and under this Contract.   Customer represents that he/she is the owner of said property and/or is authorized to enter into this Contract and to bind the Customer and property owner to each and every term and condition contained herein.

6.  **Environmental:** Customer represents and warrants that no hazardous materials and/or hazardous substances as defined by law are present at the property location.  Customer is responsible for notification, identification, removal and disposing of all materials containing any such hazardous materials including, without limitation, asbestos and lead.  Customer assumes all liability associated with such materials located on Customer's property and jobsites and agrees to hold the Service Provider harmless from disturbance of any such undisclosed materials. Customer assumes all liability for effects such materials may have on Service Provider's employees, temporary or contractual employees and subcontractors associated with this project.  The Service Provider shall not be responsible for any such hazardous materials removal, handling or disposal, unless specifically identified as follows:

Building be building evaluation

Mold remediation, if any, must be set forth in the Scope of Work and must be directed by an Industrial Hygienist protocol and clearance testing.

7.  **Disposal:** Disposal of any hazardous material and/or hazardous substances (including specimens or samples) agreed to be performed by Service Provider under this Contract will be made in the name of the Customer and under any Customer generator number or other identification of the Customer.

8.  **Limited Warranty:** SERVICE PROVIDER WARRANTS FOR TWO YEARS THAT THE WORKMANSHIP OF THE SERVICES PERFORMED PURSUANT TO THIS CONTRACT WILL BE OF THE QUALITY GENERALLY ACCEPTED IN THE EMERGENCY PROPERTY DAMAGE WATER, FIRE AND SMOKE CLEANUP, MITIGATION/RESTORATION AND MOLD REMEDIATION SERVICES INDUSTRY. SERVICE PROVIDER ALSO WARRANTS FOR ONE YEAR THAT ALL MATERIALS FURNISHED IN CONNECTION WITH THE SERVICES WILL BE NEW, OF GOOD QUALITY, AND FREE FROM DEFECTS.  IF THE SERVICES PROVIDED BY SERVICE PROVIDER FAIL TO MEET INDUSTRY STANDARDS, SERVICE PROVIDER AGREES TO PROVIDE RE-SERVICE AT NO ADDITIONAL COST FOR UP TO TWO YEARS.  THIS PROVISION EXCLUDES RE-SERVICE ASSOCIATED WITH NORMAL WEAR AND TEAR, NORMAL RE-SOILING, IMPROPER CARE, IMPROPER MAINTENANCE AND NEW LOSS EVENTS.  ANY ITEMS WARRANTED BY A MANUFACTURER WILL BE GOVERNED BY THAT WARRANTY, AND SERVICE PROVIDER WILL TAKE ALL STEPS NECESSARY TO TRANSFER ANY SUCH WARRANTY TO THE CUSTOMER. THE PARTIES SPECIFICALLY AGREE AND STIPULATE THAT THERE IS NO OTHER WARRANTY OF ANY TYPE OR NATURE WHATSOEVER, INCLUDING BUT NOT LIMITED TO, CONSUMER WARRANTIES, WARRANTY OF FITNESS FOR PARTICULAR PURPOSES, AND/OR WARRANTY OF MERCHANTABILITY.

9.  **Causes Beyond Control:** Service Provider shall not be liable for any delay due to circumstances beyond the control of Service Provider including, but not limited to, flood, fire, strikes or other labor difficulty, act of God, casualty, unavailability of materials, weather conditions, building department requests, intervention by governmental authority, civil disturbance, sabotage, fuel or energy shortage, transportation delay, equipment

breakdown, natural catastrophes, inability to obtain necessary labor, materials or manufacturing facilities or any other cause beyond Service Provider's reasonable control.

10. **Consents and Permits:** Any Federal, State or Local permits or consents required for the performance of the Scope of Work are the responsibility of the Customer; provided that, if made a part of the Scope of Work, Service Provider may obtain such permits and consents at Customer's expense. Both Service Provider and Customer will comply with all applicable governmental regulations, statutes, laws and ordinances.

11. **Indemnity:** Each party agrees to indemnify and hold harmless the other party hereto and the other party's shareholders, directors, Franchisor, officers, permitted subcontractors, employees and agents, from and against any and all claims, demands, causes of action and liabilities of any nature, including without limitation damages to property or personal injury and/or condition of the property, to the extent that any such claim, demand, cause of action and/or liability arises out of or is related to the breach of contract, negligence or other fault of the indemnifying party.

12. **Cancellation:** Service Provider shall have the right to cancel, cease or postpone any incomplete work without notice to Customer in the event that Customer becomes insolvent, adjudicated bankrupt, petitions for or consents to any relief under any bankruptcy reorganization statute, does not pay Service Provider, or becomes unable to meet its financial obligations in the normal course of business.

13. **Limitation of Liability:** In no event shall Service Provider, its owners, officers, directors, employees or agents, Franchisor, or affiliates be responsible for indirect, special, nominal, incidental, punitive, or consequential losses or damages, or for any penalties, regardless of the legal or equitable theory asserted, including contract, negligence, warranty, strict liability, statue, or otherwise.

14. **Jurisdiction and Governing Law:** The parties hereby irrevocably consent to the jurisdiction of the state or federal courts of the State of _____Alabama_____ in connection with any action or proceeding arising out of or relating to this Contract, any document or instrument delivered pursuant to, in connection with, or simultaneously with this Contract, or a breach of this Contract or any such document or instrument. This Contract shall be construed in accordance with the laws of the State of _____Alabama_____.

15. **Entire Agreement:** This Contract and the Exhibits hereto comprise the complete and entire agreement of the parties respecting the Services to be performed. No engagements, promises, representations, or warranties have been made by either party except as is expressly stated in this Contract and its Exhibits. All modifications to the Contract shall be in writing, signed by both parties hereto. The express written terms and conditions in the Contract apply in lieu of any course of dealing between the parties or usage of trade in the industry.

16. **Waiver of Rights:** A failure to either party to exercise any right provided herein shall not be deemed to be a waiver of any rights hereunder.

17. **Right To Repair/Limitations Period:** Any claim by Customer for faulty performance, non-performance, or breach under this contract shall be made in writing to Service Provider within ninety (90) days after the earlier of completion of the work or date any such performance, non-performance or breach would have been discovered exercising reasonable diligence. Failure to make such a written claim for any matter which could have been corrected by Service Provider shall be deemed waived by Customer. No action, regardless of form, relating to the subject matter of this contract may be brought more than one year after such date.

18. **Prevailing Rate:** If in an unforeseen circumstance a prevailing rate is instituted, Customer agrees that labor rates will be adjusted accordingly.

19. **Captions:** The captions and headings throughout this Contract are for convenience only. They are not part of this Contract and shall not be used in construing it.

**20. Severability:** If any provision of this contract is found to be ineffective, unenforceable or illegal for any reason under present or future laws, such provision shall be fully severable, and this contract shall be construed and enforced as if such provision never comprised a part of this contract. The remaining provisions of this contract shall remain in full force and effect and shall not be affected by the ineffective, unenforceable or illegal provision or by its severance from this contract.

**21. Attachments:** The following documents (if box is checked) are attached and incorporated herein by reference:

☐      Exhibit A, Scope of Work
☒      Exhibit B, Rate Schedule

Agreed to and accepted this 20th day of _____March_____, 20 18 .

SERVPRO® of ___Birmingham___    Customer (Authorized Signer):

Name: _____    Name: _____

Title: Key Accounts Manager    Title: Director of Captial Planning and Facilities

Disaster Recovery Authorization/Service Contract
Last Update: April 2012



**Fire & Water – Cleanup & Restoration®**

of Birmingham
Construction Division

10 Monroe Dr, Pelham, AL 35124  (205) 664-6770

This Rate Sheet is to be used in conjunction with the SERVPRO of Birmingham Mitigation Rate Sheet signed for **Jacksonville State University** on  3/20/2019  by  David  Thompson  . All Rates already agreed to by **Jacksonville State University** may be used in accordance with this addendum along with the following rates:

**Labor**

| | |
|---|---|
| Roofing | $95.00/hr |
| Carpenter | $86.00/hr |
| Drywaller/Finisher | $74.00/hr |
| Painter | $68.00/hr |
| Electrician | $98.00/hr |
| Mechanical | $98.00/hr |
| Equipment Operator | $71.00/hr |
| Brick Mason | $68.00/hr |

**Materials**

- All materials will be billed out at cost plus 30%

**Subcontract**

- Subcontract Items will be billed out at 10% then 10% or 21% total
- Subcontract Items includes all construction related expenses excluding labor and material. These items include but are not limited to equipment rental, fueling, delivery, etc.

x  D.L B. Thom
Signature

David B. Thompson
Printed Name

05.25.19
Date

**Like it never even happened.®**
*Independently Owned and Operated*

# ALABAMA STATE BOARD OF ADJUSTMENT

## BWW, Inc. d/b/a ServPro of Birmingham

## Exhibit "B"



Oscar M. Price III
oprice@wallacejordan.com

ATTORNEYS & COUNSELORS

Sender Direct Dial: 205.874.0370
Sender Direct Fax: 205.874.3270

September 24, 2019

**BY EMAIL AND U.S. MAIL**

Mr. Max Graham
Risk Manager
Alabama Division of Risk Management-State Insurance Fund
777 S Lawrence St
Montgomery, Alabama 36104

Re:     Jacksonville State University's Claims to the State Insurance Fund for losses
        incurred on March 19, 2019

Dear Mr. Graham:

Our firm represents Jacksonville State University ("JSU") in connection with the significant damages to its properties and buildings from a tornado that struck its campus on March 19, 2018.  Attached is JSU's revised Sworn Statement of Proof of Loss ("POL") in the amount of $134,377,464.09 (Exhibit 1) - an update of JSU's POL submitted to the Alabama State Insurance Fund ("SIF") on February 15, 2019.  This updated POL includes $28,947,307.25 for the damages to Merrill and Wallace Halls and $56,244,821.38 for amounts invoiced by ServPro.  JSU's claims for Merrill and Wallace Halls are scheduled to be resolved in November in arbitration before Phil Adams, and SIF is represented on those claims by Robert Northcutt.  This letter is directed to you as the person responsible for SIF claim administration.  The purpose of this letter is to request SIF promptly and fairly adjust JSU's other claims.  To that end, we have a request / suggestion on a procedure for resolving these claims in a prompt, fair and efficient manner.  This letter is also to correct certain inaccurate information provided to SIF.

**JSU's claims should already have been resolved and paid.**

The damage to JSU's campus occurred on March 19, 2018, over a year and a half ago.  Although the claims process and the payment of claims initially went very smoothly and claims and payments were timely and fairly processed, that abruptly changed in January 2019 (this was approximately the time when the total claim reached the level of the reinsurance).  Beginning in January 2019, JSU encountered a failure to timely and fairly process and pay claims.  As a result, in an effort to expedite the processing and payment of claims, on February 15, 2019, JSU submitted

September 24, 2019
Page 2

a POL and requested payment. It has been *over six months* since that submission and it still has not been resolved.

There appears to be no justification for this unreasonable delay. As indicated on the attached POL, JSU is due a significant amount of money. JSU is in dire need of these claims proceeds to properly operate since it has been forced to self-fund a significant portion of its casualty loses. JSU is appropriately concerned that this process will continue to be delayed and remain unsettled indefinitely.

At this time, the vast majority of the repairs and replacements for the damaged property have been completed or are nearing completion. Contrary to assertions by SIF's consultants and representatives, they were fully involved in all material aspects of this process. Projects were put out for competitive bids in accordance with applicable law. SIF was provided with all of the documentation showing the cost expended by JSU. This documentation fully supports the claim amounts on the attached POL. In the instances where JSU repaired or replaced with other than like kind and quality, the submitted claim documents indicate that JSU is only seeking to recover for the cost of like kind and quality. It should not be that difficult for SIF to review these claims and determine that JSU's claim is substantiated and is due and payable. It should not take six months. Moreover, if SIF determines it should pay JSU less than the amount JSU spent to repair or replace with like kind and quality, SIF is obligated to clearly demonstrate a legitimate reason and basis for that denial and should promptly communicate that reason to JSU in writing.

**JSU is not trying to have SIF pay for enhancements to the JSU campus.**

One of the inaccurate allegations is that JSU is seeking to have SIF pay for enhancements to its campus. This is absolutely untrue.

Although JSU has made it perfectly clear in all of its conduct and submissions that it is not claiming the cost of enhancements, some SIF representatives and consultants continue to assert this false narrative in an attempt to justify their unilateral reductions of like kind and quality actual JSU costs. JSU has chosen, in several instances, to improve its facilities. It never tried to conceal this fact. It is a wise and judicious use of JSU's funds to take advantage of the situation to improve its facilities with funds from FEMA and JSU. Nothing in the policy prohibits JSU from using the funds received from SIF to fund the majority of the costs of an improved facility provided SIF is only paying the amounts due under the policy. The fact that JSU is using other funds to improve its facilities does not justify a refusal by SIF to pay JSU the amounts due under the policy.

In one case, SIF representatives and consultants went so far as to heavily edit a quote from a JSU representative in the JSU newsletter to deliberately make it appear that he said that JSU was using SIF money to pay for enhancements when he clearly never said that. In the actual quote, the JSU representative clearly stated "insurance is only responsible for like kind and quality-meaning insurance owes JSU for [the shingles on the roof at the time of the tornado]." That part of the quote was omitted to deliberately misquote the JSU representative. The actual quote goes on to discuss FEMA paying for upgraded shingles. The part of the quote about FEMA paying for the upgrades was also omitted to make it falsely appear that he was saying that SIF was paying for the roofing upgrade. This quote, taken in context, actually confirmed that JSU was requesting SIF pay for like kind and quality and that FEMA was paying for enhancements. The fact that SIF's

SIF_005941

DOF_005941

September 24, 2019
Page 3

representatives and consultants were willing to delete parts of the quote to make it say exactly the opposite of what was said should call into question the accuracy and motives of SIF's representatives and consultants. A copy of the article is attached as Exhibit 2.

**JSU has fully cooperated with SIF.**

Another inaccurate assertion is that JSU has not fully cooperated with SIF and failed to provide SIF with requested information. On several occasions, in an effort to justify their unreasonable delay in processing the claims, SIF's representatives and consultants have accused JSU of a lack of cooperation and failure to provide requested documents. This is inaccurate. JSU has fully and timely cooperated and provided everything that SIF requested. In several instances, JSU provided the documents and information multiple times. When SIF's representatives have made this allegation, JSU promptly disputed it, but more importantly, JSU requested examples of requested documents or information that JSU failed to provide. SIF has never provided a single example of any SIF request that JSU failed to satisfy. If JSU really was uncooperative and nonresponsive, there should be numerous examples that SIF could easily produce. If there are in fact documents that SIF needs to adjust these claims (that have not already been provided), please advise immediately so JSU can provide them.

**SIF's communication has been untimely and incomplete.**

JSU has been attempting since January to resolve this matter. As indicated above, on February 15, 2019, JSU submitted a POL in the amount of $100,475,595.70. This was based on information that JSU received from SIF's representative. JSU and SIF have been meeting for months and have not been able to resolve these claims. As indicated on the attached timeline (Exhibit 3), in spite of repeated requests, SIF took months to provide JSU, in writing, SIF's specific numbers. In addition, in spite of repeated requests, SIF continues to refuse to provide JSU with its positions on the claims and explanations for those positions. Finally, in spite of numerous requests, SIF refuses to even provide the name of someone for JSU to discuss the resolution of these claims. SIF's refusal to provide information in a timely manner, its refusal to explain its position in writing, and its refusal to even identify a person to discuss the timely resolution of these claims, certainly indicates that there is a problem with how these claims are being adjusted.

**SIF has asserted baseless deductions from JSU's claims.**

SIF's consultants and representatives in meetings with JSU have verbally asserted certain baseless deductions from JSU's claims. (Since SIF refuses to provide any written explanations for their positions, these assertions are not in writing.) For example, SIF indicated that it was going to reduce each of JSU's claims to eliminate the portion of the repair contractor's overhead that the contractor allocated to "mobilization, warranty and documentation" in the contractor's schedule of values. There is no basis in the policy for such a reduction. Initially, SIF tried to justify this unfounded deduction by asserting that SIF had never paid for "these expenses as separate items or additional expenses", even though SIF's representatives and consultants knew that JSU was not claiming mobilization, warranty and documentation as separate items or additional expenses. SIF's representative and consultants just made that up to try and justify these unreasonable deductions. When this was identified to SIF, rather than conceding the inappropriateness of these deductions, SIF requested a detailed explanation of why these deductions were inappropriate. In

SIF_005942

DOF 005942

September 24, 2019
Page 4

spite of the fact that SIF never provided an explanation of why these deductions were appropriate. JSU provided a detailed written explanation of why these deductions were inappropriate. This was over a month ago and SIF has not provided a response or an acknowledgement that reducing JSU's claims by the portion of the repair contractor's overhead that is allocated to "mobilization, warranty and documentation" is inappropriate. JSU still does not know if SIF maintains that it can deduct these overhead amounts from JSU's claims. A copy of the letter explaining why the reductions are inappropriate is attached as Exhibit 4.

**ServPro**

When the tornado struck the JSU campus, it did over $100,000,000 in damage. JSU was faced with the herculean task of getting the campus in shape to open for the Fall semester. It would have been devastating to JSU and the entire community if JSU could not open for the 2018 Fall semester. With the approval of SIF's representatives and consultants, JSU hired ServPro who did an excellent job assisting JSU in getting the campus ready to open. A representative of SIF actively supervised and directed ServPro's work. SIF's representative reviewed and approved all contracts with ServPro. SIF's representative was actively involved in determining each ServPro item of work. SIF's representative reviewed and approved the ServPro invoices and was intimately involved, in a managerial capacity, with all decisions related to ServPro's scope of work and associated costs for every item of loss. At no time did the SIF representative raise any objection to the language of the ServPro contracts, the ServPro rates, or the work being done by ServPro. Most of ServPro's work was completed in 2018.

In January 2019, SIF suddenly had a problem with ServPro's invoices (once again about the time the reinsurers became involved). SIF's representatives suddenly asserted that there was something wrong with ServPro's invoices and/or practices that is so significant that it justified SIF withholding approximately $12,000,000 of payments to JSU for ServPro. Furthermore, SIF has claimed that the alleged misconduct was so significant that it justified subjecting ServPro to a forensic audit of all their invoices and practices. That audit began in January and, in spite of numerous requests, neither ServPro nor JSU has been provided with the results of that audit.

Although they were reviewed and approved by SIF, ServPro's contracts were with JSU. JSU is liable for the amounts properly due ServPro. SIF's refusal to pay the ServPro invoices has created a significant liability for JSU. In addition, ServPro continues to assert its right to interest on those delinquent payments. On several occasions, JSU has requested information on SIF's dispute with ServPro. Since JSU is liable for the payments to ServPro, it is more than appropriate that SIF provide JSU with this information. SIF has refused to provide JSU with substantive explanation of the problem with ServPro, much less any documents or written reports justifying SIF's position. If ServPro engaged in conduct or billing that was inappropriate, SIF should have the evidence of this and should provide it to JSU (and ServPro). Furthermore, after eight months, SIF should certainly have concluded its ServPro audit and provided the results to JSU and ServPro. If the audit revealed something ServPro did wrong, SIF should easily be able to document it to JSU. Even if the audit is not complete, SIF should have some substantial evidence that supports their denial of the ServPro claims and share it with JSU. SIF's absolute refusal to provide JSU with any explanation or support for its position, in spite of repeated requests, certainly causes JSU to question the validity of SIF's denial the ServPro amounts.

SIF  005943

September 24, 2019
Page 5

It should also be noted that, as indicated above, ServPro did an outstanding job getting JSU's campus in a position to open for Fall classes. SIF did not have any problems with ServPro's work or rates at the time the work was done and did not have any problem with the invoices at the time they were received. JSU will be glad to provide SIF with copies of the SIF emails approving the ServPro invoices. Because of the manner in which SIF has handled ServPro, JSU is concerned that, if there was another catastrophe in the future, ServPro would not be available to assist JSU. Likewise, because of the way SIF has handled ServPro, ServPro might not be available to other SIF policy holders. Eliminating the option of ServPro would not be good for JSU or the other policy holders.

SIF is now also asserting that the dispute with ServPro somehow prevents SIF from resolving JSU's claims for property damage. JSU does not understand why SIF, after nine months, has not been able to resolve the dispute with ServPro, has not documented or explained the problems with ServPro, and now asserts that the ServPro dispute enables SIF to further delay payment of amounts due JSU.

Please immediately address the situation with ServPro. JSU again requests that SIF provide appropriate explanation and documentation of the problems with the ServPro invoices. Please also advise what is being done to bring this matter to resolution. Because of JSU's significant exposure in this matter, JSU would like to be fully advised of the situation and allowed to participate in its resolution.

**Conclusion**

JSU recognizes that SIF has a duty to the many state and other entities participating in the insurance program to adjust JSU's claims in accordance with applicable standards and the SIF policy, and only pay the amounts due under the policy. JSU seeks nothing more from SIF and agrees that all entities participating in the program could be impacted if SIF pays claims that are not due under the policy. That duty to the other participants, however, does not justify unreasonable delays or arbitrary reductions of amounts due. SIF's duty to the other participants does not nullify SIF's legal obligation to JSU to pay all amounts due under the policy and do so in a timely manner. JSU recognizes SIF's responsibility to the fund to properly adjust these claims. Properly adjusting the claims does not include unnecessary delays, inaccurate statements, and arbitrary deductions. Should SIF allow the reinsurers, or others, to delay the claims process and cause SIF to not pay the amounts due JSU, JSU and the taxpayers of Alabama will ultimately suffer. Furthermore, such a practice could undermine the credibility of SIF with the many other state agencies and institutions which rely upon that program to promptly process and pay their claims.

After nine months of meetings with no resolution, it appears that the parties should attempt a different procedure to resolve the claims. Accordingly, attached are copies of two emails and submissions for JSU's claims on Item #0070 Curtiss Hall (Exhibit 5) and Item #0330 Fitzpatrick Hall (Exhibit 6) with appropriate back up that were submitted today. In accordance with SIF's request, they do not include the ServPro expenses of $433,238.69 and $487,506.39, respectively, on these buildings. As indicated on the emails, JSU requests that, if SIF disputes any item of work or amount, SIF identify that item and provide an explanation for the disagreement. Since SIF has

SIF_005944

DOF_005944

September 24, 2019
Page 6

had this information and back-up for months, it should be able to immediately respond to these claims. Hopefully, by addressing the claims one building at a time, the parties can make progress toward resolving all the claims. JSU suggests that we attempt this procedure on these two buildings and see how it works. If it works, JSU will make a similar submission for each of the other buildings. In order for this process to work, SIF must make the commitment of time and resources to promptly respond to the claims and require the same of its representatives and consultants.

The parties need to find a way to promptly and fairly resolve these claims. If you have another solution, please suggest it. JSU cannot allow this to continue indefinitely but also cannot accept significantly less than it is entitled under the policy just to get it resolved. Neither JSU nor SIF are serving the taxpayers of Alabama, if they cannot find a way to fairly and promptly resolve these claims.

If you have any questions, please contact me. I hope that with your assistance, JSU and SIF can resolve this matter in the very near future in a fair and reasonable manner. Please have someone call me to discuss how we can bring this matter to resolution.

Sincerely,

Oscar M. Price III

OMP:cja
Enclosure

cc (by email):  Kelly Butler
Robert Northcutt, Esq.
Hon. Samuel Monk
Richard H. Cater, Esq.
Albert L. Jordan, Esq.
Samuel T. Sessions, Esq.

SIF_005945

# ALABAMA STATE BOARD OF ADJUSTMENT

## BWW, Inc. d/b/a ServPro of Birmingham

## Exhibit "C"

 **UNIVERSITY COUNSEL**
JACKSONVILLE STATE UNIVERSITY

December 3, 2020

Mr. Barry Hair, Esq.
Clark Hair & Smith PC
1000 Urban Center Drive / Suite 125
Birmingham, Al. 35242

Dear Mr. Hair:

I am in receipt of your letter dated November 12, 2020.

Based upon the audit presentation in Birmingham, it appears that JSU may have been one of the victims of gross, and potentially criminal, overbilling by ServPro. Indeed, as I am sure you are aware, representatives from the FBI and the U.S. Attorney's office have been investigating ServPro's charges to JSU for several months now.

ServPro's apparent fraud and overbilling have created massive problems for JSU. Among other issues, the State of Alabama has, to date, refused to reimburse JSU for approximately $15,000,000 in tornado related expenses because of ServPro's alleged malfeasance. This has resulted in tremendous financial hardship for JSU, delayed the completion of work and disrupted JSU's normal operations.

The circumstances regarding ServPro's apparent gross overbillings are particularly troubling. ServPro knew that in the weeks and months that followed the destruction from the tornado that JSU did not have the manpower or resources to closely monitor ServPro's actions. Instead, JSU was relying upon ServPro to proceed with honesty and in good faith. JSU's reliance was misplaced.

Contrary to your assertions, JSU has been steadfast for some time now that it did not owe money to ServPro. JSU's outside counsel's discussion of an arbitration agreement with ServPro is not an acknowledgement that money is owed, but, at best, a showing that there was a dispute over whether additional moneys were owed. JSU ultimately refused to arbitrate with ServPro. To be clear, JSU will not pay any additional amounts to ServPro until the FBI investigation is concluded and JSU is assured by the State of Alabama that any further payments to ServPro will be reimbursed.

Contrary to your assertions, JSU does not "fully understand the great burden [the non-payment of invoices] continues to be for ServPro and its people." To the contrary, ServPro has been paid over

700 Pelham Road North
Jacksonville, AL 36265-1602
P. 256.782.5104
P. 800.231.5291
F. 256.782.5680
www.jsu.edu

An Equal Opportunity | Affirmative Action Employer

$48,000,000 by JSU.  The burden that has arisen out of ServPro's work has fallen on JSU and the State of Alabama.

Leaving aside that there appears to be significant evidence of overbilling by ServPro, any breach of contract claim by ServPro against JSU would fail for numerous reasons.  Please contact me if you have any questions.

Sincerely,

Gregory F. Harley

# ALABAMA STATE BOARD OF ADJUSTMENT

## BWW, Inc. d/b/a ServPro of Birmingham

## Exhibit "D"

**BWW, Inc. dba SERVPRO of Birmingham Large Loss**

2000 Huntley Pkwy
Pelham, AL 35124
Phone: (205) 664-6770

## Master Final Invoice

INVOICE

| INVOICE # | | DATE |
|---|---|---|
| Master | | 2/13/2020 |
| CUSTOMER ID | | TERMS |
| | | |

BILL TO

Jacksonville State University
700 Pelham Road North
Jacksonville, AL 36265

SHIP TO

| Building Name | Final Invoice Number | Previous Balance | Schedule A Credits from Final Internal Audit | Schedule D Credits from Final Internal Audit | Schedule E Credits from Final Internal Audit | Final Total |
|---|---|---|---|---|---|---|
| JSU-Alumni House | 1402 | $673.72 | -$3,100.13 | $39,386.36 | $39,386.36 | -$2,426.41 |
| JSU-Ayers Hall | 1403 | $0.00 | | $632.74 | $632.74 | $0.00 |
| JSU-Brewer Hall | 1404 | $79.86 | | $18,157.62 | $18,157.62 | $79.86 |
| JSU-Cafeteria | 1405 | $0.00 | | $15,884.80 | $15,884.80 | $0.00 |
| JSU-Coliseum | 1406 | $12,071.50 | -$11,944.00 | $903,819.14 | $903,819.14 | $127.50 |
| JSU-College Apts | 1407 | $305.47 | -$3,487.50 | $71,115.70 | $71,115.70 | $127.50 |
| JSU-Daugette Hall | 1408 | $9.27 | | $274.38 | $274.38 | $9.27 |
| JSU-General Conditions | 1409 | $138,649.81 | -$36,225.88 | $1,119,655.58 | $1,119,655.58 | $102,423.93 |
| JSU-Grounds | 1410 | $88,347.57 | -$281.88 | $276,747.77 | $276,747.77 | $88,065.69 |
| JSU-Hammond | 1411 | $5,634.02 | | $11,312.44 | $11,312.44 | $5,634.02 |
| JSU-Honors Hall | 1412 | $311.88 | | $8,863.04 | $8,863.04 | $311.88 |
| JSU-Honors House | 1413 | $58,753.35 | | $119,090.01 | $119,090.01 | $58,753.35 |
| JSU-Int'l House | 1414 | $4,795.61 | -$914.38 | $101,711.38 | $101,711.38 | $3,881.23 |
| JSU-Library | 1415 | $0.00 | -$529.38 | $155,125.33 | $155,125.33 | -$529.38 |
| JSU-Logan Hall | 1416 | $2,168.70 | | $101,633.98 | $101,633.98 | $2,168.70 |
| JSU-Martin Hall | 1417 | $4,994.00 | -$1,127.50 | $352,164.08 | $352,164.08 | $3,866.50 |
| JSU-Mason Hall | 1418 | $6,564.55 | -$4,958.13 | $212,554.02 | $212,554.02 | $1,606.42 |
| JSU-McGee Science Ctr | 1419 | $451.26 | | $48,127.71 | $48,127.71 | $451.26 |
| JSU-Merrill Hall | 1420 | $4,777.15 | -$7,664.63 | $147,913.51 | $147,913.51 | -$2,887.48 |
| JSU-Patterson Hall | 1421 | $2,664.65 | -$275.00 | $127,231.97 | $127,231.97 | $2,389.65 |
| JSU-Presidents House | 1422 | $5,442.49 | | $35,753.62 | $35,753.62 | $5,442.49 |
| JSU-Ramona Wood | 1423 | $0.00 | | $12,964.75 | $12,964.75 | $0.00 |
| JSU-Rock House | 1424 | $380.42 | | $7,072.29 | $7,072.29 | $380.42 |
| JSU-Rowe Hall | 1425 | $4,770.47 | -$11,821.00 | $264,241.58 | $264,241.58 | -$7,050.53 |
| JSU-Salls Hall | 1426 | $0.00 | | $4,896.63 | $4,896.63 | $0.00 |
| JSU-Self Hall | 1427 | $0.00 | | $9,974.52 | $9,974.52 | $0.00 |
| JSU-Stone Center | 1428 | $0.00 | | $32,747.59 | $32,747.59 | $0.00 |
| JSU-Theron Montgomery | 1429 | $0.00 | | $182.75 | $182.75 | $0.00 |
| JSU-Visitor Center | 1430 | $1,184.22 | | $7,283.24 | $7,283.24 | $1,184.22 |
| JSU-Wallace Hall | 1431 | $86,311.31 | -$8,887.50 | $992,600.84 | $992,600.84 | $77,423.81 |

$429,341.28    -$91,216.91    $5,199,119.37    $5,199,119.37    $338,124.37

Fed Tax ID# 63-1127232

**BWW, Inc, dba SERVPRO of Birmingham Construction**

2000 Huntley Pkwy
Pelham, AL 35124
Phone: (205) 664-6770

INVOICE

## Master Final Invoice

| INVOICE # | | DATE |
|---|---|---|
| Master | | 2/13/2020 |
| CUSTOMER ID | | TERMS |
| | | |

BILL TO
Jacksonville State University
700 Pelham Road North
Jacksonville, AL 36265

SHIP TO

| Building Name | Final Invoice Number | Previous Balance | Schedule A Credits from Final Internal Audit | Schedule D Credits from Final Internal Audit | Schedule E Credits from Final Internal Audit | Final Balance |
|---|---|---|---|---|---|---|
| 1. General Conditions | 5140001 | $1,960,524.91 | $39,211.63 | $12,998.16 | | 1,905,415.92 |
| 2. Grounds | 5140002 | $3,702.60 | | | | 3,702.60 |
| Alumni House | 5140003 | $282.16 | $332.50 | | | (50.34) |
| Amphitheatre | 5140004 | -$1,738.01 | | | | (1,738.01) |
| Amphitheatre (Roof) | 5140005 | $3,673.97 | | | | 3,673.97 |
| Amphitheatre (Trim) | 5140006 | $2,774.05 | | | | 2,774.05 |
| Athletic Field House | 5140007 | $448.80 | | | | 448.80 |
| Ayers Hall | 5140008 | $49,277.78 | | | | 49,277.78 |
| Ayers Hall (Phase 2) | 5140009 | -$3,423.72 | $855.00 | | | (4,278.72) |
| Ayers Transportation Building | 5140010 | $14,871.13 | | | | 14,871.13 |
| Baseball Field | 5140011 | $396.00 | | | | 396.00 |
| Baseball Field - Phase 2 (Non-Insurance) | 5140012 | $0.00 | | | | - |
| Bibb Graves Hall | 5140013 | $63,284.38 | $950.00 | | | 62,334.38 |
| Brewer Hall | 5140014 | $16,990.86 | | | | 16,990.86 |
| Campus Housing | 5140015 | $716.78 | | | | 716.78 |
| Carlisle Fine Arts | 5140016 | $1,487.78 | | | | 1,487.78 |
| Chemical Storage Building | 5140017 | $15,695.27 | | | | 15,633.78 |
| College Apartments | 5140018 | $6,463.12 | $1,268.50 | | | 5,179.44 |
| College Apartments (Add'l Trades) | 5140019 | $4,594.00 | | | | 4,594.00 |
| College Apartments (Cabinets) | 5140020 | $183.54 | | | | 183.54 |
| College Apartments (Drywall) | 5140021 | $33,067.21 | | | | 33,067.21 |
| College Apartments (Electrical) | 5140022 | $12,750.83 | | | | 12,750.83 |
| College Apartments (Flooring) | 5140023 | $7,068.06 | | | | 7,068.06 |
| College Apartments (HVAC) | 5140024 | $603.79 | | | | 603.79 |
| College Apartments (Paint) | 5140025 | $5,813.43 | | | | 5,813.43 |
| College Apartments (Plumbing) | 5140026 | $3,121.88 | | | | 3,121.88 |
| College Apartments (Siding) | 5140027 | -$4,228.70 | | | | (4,228.70) |
| College Apartments (Tile) | 5140028 | $7,326.02 | | | | 6,436.81 |
| College Apartments (Trim) | 5140029 | $4,232.13 | | | | 4,232.13 |
| College Apartments (Windows) | 5140030 | $2,687.30 | | | | 2,687.30 |
| Crow Hall | 5140031 | $33,432.56 | $574.00 | | | 32,858.56 |
| Crow Hall (Phase 2) | 5140032 | $6,563.45 | | | | 6,563.45 |
| Curtiss Hall | 5140033 | $58,639.30 | | | | 58,639.30 |
| Daugette Hall | 5140034 | $101,709.07 | | | | 91,663.87 |
| Daugette Hall - Computer Center | 5140035 | $713.53 | | | | 713.53 |
| Dixon Hall | 5140036 | $66,539.66 | | | | 66,539.66 |
| Dixon Hall (Phase 2) | 5140037 | $2,044.05 | | | | 2,044.05 |
| Duncan Maintenance | 5140038 | -$12,300.99 | | | | (12,300.99) |
| FEMA Grounds | 5140039 | $14,282.17 | | | | 14,282.17 |
| Fitzpatrick Hall | 5140040 | $99,176.34 | | | | 99,176.34 |
| Forney Hall | 5140041 | $0.00 | | | | - |
| Hammond Hall | 5140042 | $49,044.76 | | | | 49,044.76 |
| Hammond Hall (Phase 2) | 5140043 | $481.60 | | | | 481.60 |
| Honors House | 5140044 | $4,181.27 | | | | 2,950.79 |
| Honors House (Drywall) | 5140045 | $0.00 | | | | - |
| Honors House (Electrical) | 5140046 | $0.00 | | | | - |
| Honors House (Flooring) | 5140047 | $0.00 | | | | - |
| Honors House (Framing) | 5140048 | $0.00 | | | | - |
| Honors House (Gutters) | 5140049 | $1,980.00 | | | | 1,980.00 |
| Honors House (Paint) | 5140050 | $0.00 | | | | - |
| Honors House (Plumbing) | 5140051 | $0.00 | | | | - |
| Honors House (Roof) | 5140052 | $2,327.50 | | | | 2,327.50 |
| Honors House (Siding) | 5140053 | $2,792.64 | | | | 2,792.64 |

| | | | | | |
|---|---|---|---|---|---|
| Honors House (Windows) | 5140054 | $12,951.99 | | | 12,951.95 |
| Houston Cole Library (Add'l Trades) | 5140055 | $6,481.60 | | | 6,481.60 |
| Houston Cole Library (Demo) | 5140056 | $1,883,579.06 | $3,619.75 | $362.64 | 1,879,596.67 |
| Houston Cole Library (Repair) | 5140057 | $2,300,981.07 | $5,880.00 | | 2,295,101.07 |
| Houston Cole Library (Remaining Items) | 5140058 | $302,118.42 | | | 302,118.42 |
| International House | 5140059 | $108,083.03 | | | 103,925.03 |
| International House (Add'l Trades) | 5140060 | $7,237.97 | | | 7,237.97 |
| Jack Hopper Dining Hall | 5140061 | $102,805.72 | $6,697.50 | | 96,108.22 |
| Kennamer Hall | 5140062 | $0.00 | | | - |
| Kitty Stone | 5140063 | -$6,994.05 | | | (6,994.05) |
| Kitty Stone Contents | 5140064 | $9,490.00 | | | 9,490.00 |
| Logan Hall | 5140065 | $247,140.08 | $26,326.50 | $8,469.84 | 208,971.28 |
| Logan Hall (Add'l Trades) | 5140066 | $4,880.00 | | | 4,880.00 |
| Logan Hall (Phase 2) | 5140067 | $764.10 | | | 764.10 |
| Martin Hall | 5140068 | $2,469,919.99 | $130,914.50 | | 2,338,959.03 |
| Martin Hall (Add'l Trades) | 5140069 | $27,113.60 | | | 27,113.60 |
| Mason Hall | 5140070 | -$42,309.60 | $2,218.00 | | (44,527.60) |
| Mason Hall (Content Cleaning) | 5140071 | $168,034.03 | $756.00 | | 167,278.03 |
| McGee Building | 5140072 | $198,575.35 | $4,128.00 | | 194,447.35 |
| McGee Science Center | 5140073 | -$543,505.27 | $1,828.75 | | (545,334.02) |
| Meehan Hall | 5140074 | $33,326.02 | | | 33,326.02 |
| Merrill Hall | 5140075 | -$4,304.08 | $1,163.50 | | (5,467.58) |
| Merrill Hall (Mural) | 5140076 | $18,260.30 | | | 18,260.30 |
| Pannell Hall | 5140077 | $272.00 | | | 272.00 |
| Patterson Hall | 5140078 | $277,798.40 | $5,459.75 | | 271,836.61 |
| Patterson Hall (Add'l Trades) | 5140079 | $230.60 | | | 230.60 |
| Paul Carpenter Village- Delta Chi | 5140080 | $4,870.62 | | | 4,870.62 |
| Paul Carpenter Village- Delta Chi Roof | 5140081 | $1,688.76 | | | 1,688.76 |
| Paul Carpenter Village- Kappa Alpha Order | 5140082 | $17,335.34 | | | 16,334.91 |
| Paul Carpenter Village- Kappa Alpha Order-Ro | 5140083 | $6,854.39 | | | 6,854.39 |
| Paul Carpenter Village- Kappa Sigma | 5140084 | -$3,099.11 | $7,362.50 | | (10,461.61) |
| Paul Carpenter Village- Kappa Sigma-Roof | 5140085 | $11,082.03 | | | 11,082.03 |
| Paul Carpenter Village- Leadership House For | 5140086 | $5,783.76 | | | 5,014.25 |
| Paul Carpenter Village- Leadership House For | 5140087 | $7,408.45 | | | 7,408.45 |
| Paul Carpenter Village- Pi Kappa Phi | 5140088 | $400.75 | | | 400.75 |
| Pete Mathews Coliseum | 5140089 | $178,913.88 | $11,328.75 | | 167,985.13 |
| Pete Mathews Coliseum (Phase 2) | 5140090 | $31,775.08 | $3,785.00 | | 27,990.08 |
| Pete Mathews Coliseum (Phase 3) | 5140091 | $2,713.39 | | | 2,713.39 |
| President's Home | 5140092 | $38,641.77 | | | 38,630.22 |
| Ramona Wood Building | 5140093 | $31,776.72 | | | 31,451.13 |
| Regional Medical Center | 5140094 | $9,894.01 | | | 9,894.01 |
| Regional Medical Center - Phase 1 | 5140095 | $0.00 | | | - |
| Regional Medical Center - Phase 2 | 5140096 | $6,066.72 | | | 6,066.72 |
| Regional Medical Center - Phase 3 | 5140097 | $6,091.52 | | | 6,091.52 |
| Regional Medical Center - Phase 4 | 5140098 | $0.00 | | | - |
| Rock House | 5140099 | -$13,339.09 | | | (13,339.09) |
| Rock House (Drywall) | 5140100 | $17,063.20 | | | 17,063.20 |
| Rock House (Electrical) | 5140101 | $2,403.45 | | | 2,403.45 |
| Rock House (Flooring) | 5140102 | $0.00 | | | - |
| Rock House (Framing) | 5140103 | $16,377.68 | | | 16,377.68 |
| Rock House (Gutters) | 5140104 | $118.80 | | | 118.80 |
| Rock House (HVAC) | 5140105 | -$13,528.90 | | | (13,528.90) |
| Rock House (Paint) | 5140106 | $3,336.27 | $1,904.00 | | 1,432.27 |
| Rock House (Roof) | 5140107 | -$237.50 | | | (237.50) |
| Rock House (Siding) | 5140108 | $10,578.69 | | | 10,578.69 |
| Rowe Hall | 5140109 | $121,655.31 | $9,156.00 | | 104,215.01 |
| Rowe Hall (Phase 2) | 5140110 | $163.20 | | | 163.20 |
| Roy Webb Storage | 5140111 | $92,510.15 | | | 92,510.15 |
| Salls Hall | 5140112 | $17,164.65 | | | 17,164.65 |
| Self Hall | 5140113 | $1,374.70 | | | 1,374.70 |
| Softball Field | 5140114 | $366.50 | | | 366.50 |
| Softball Field (Equipment Shed) | 5140115 | $742.51 | | | 742.51 |
| Sparkman Hall | 5140116 | $1,080.50 | | | 1,080.50 |
| Stadium Tower | 5140117 | $0.00 | | | - |
| Stephenson Hall | 5140118 | $152,681.50 | | | 152,681.50 |
| Stone Center of Performing Arts | 5140119 | $10,668.72 | | | 10,668.72 |
| Tennis Courts | 5140120 | $3,026.74 | | | 3,026.74 |
| Theron Montgomery Building | 5140121 | $89,776.91 | | | 89,776.91 |
| Visitor's Center | 5140122 | $17,114.10 | | | 16,836.62 |
| Visitor's Center (ACT) | 5140123 | $641.83 | | | 641.83 |
| Visitor's Center (Brick) | 5140124 | $565.32 | | | 565.32 |
| Visitor's Center (Drywall) | 5140125 | $0.00 | | | - |
| Visitor's Center (Electrical) | 5140126 | $3,785.25 | | | 3,785.25 |
| Visitor's Center (Flooring) | 5140127 | $501.60 | | | 501.60 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Visitor's Center (Framing) | 5140128 | $3,166.27 | | | | 3,166.27 |
| Visitor's Center (Gutters) | 5140129 | $163.20 | | | | 163.20 |
| Visitor's Center (HVAC) | 5140130 | $1,391.60 | | | | 1,391.60 |
| Visitor's Center (Paint) | 5140131 | $5,868.63 | | | | 5,837.83 |
| Visitor's Center (Roof) | 5140132 | $1,157.81 | | | | 1,157.81 |
| Visitor's Center (Siding) | 5140133 | $2,331.71 | | | | 2,331.71 |
| Visitor's Center (Trim) | 5140134 | $2,956.37 | | | | (7,043.63) |
| Visitor's Center (Windows) | 5140135 | $1,636.34 | | | | 1,636.34 |
| Wallace Hall | 5140136 | $107,332.85 | $15,974.50 | | | 91,358.35 |
| Wallace Hall (Non-Insurance) | 5140137 | $0.00 | $688.00 | | | (688.00) |
| Williams Infirmary | 5140138 | $1,238.84 | | | | 1,238.84 |
| Williams Infirmary (Siding) | 5140139 | $744.15 | | | | $744.15 |
| Williams Infirmary (Roof) | 5140140 | $3,028.07 | | | | $3,028.07 |
| | | $11,252,990.56 | $282,382.63 | $12,998.16 | $8,832.48 | 10,905,857.91 |

Fed Tax ID# 63-1127232