# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| BWW, Inc., d/b/a SERVPRO of Birmingham, | ) ) ) |
| Plaintiff, | ) ) Case No.: 1:21-CV-00470-CLM |
| v. | ) ) ) |
| James Brigham, et al., | ) ) |
| Defendants. | ) |

**Plaintiff's Response to Defendants' Supplement to Motion to Dismiss and Response to Plaintiff's Claim in the Board of Adjustment (as corrected)**

Prompted by ServPro's Board of Adjustment claim, the Defendants moved for leave to supplement their argument in support of their motion to dismiss, citing as its principal ground that ServPro was, "…seeking damages from JSU officers in their official capacity in federal Court and from JSU in the Board of Adjustment." (Doc. 25, p. 2). Even though this mistaken premise was abandoned in the Defendants' supplemental brief, its assertion illuminates JSU's continuous misunderstanding and mischaracterization of the claims asserted and the relief sought in this lawsuit. This response begins with a correction of this oft-repeated mischaracterization of the Complaint and follows with a response to the assertions actually made in the Defendants' supplemental brief.

1. <u>The Defendants would rewrite the lawsuit to fit their defenses: the Complaint does not and has never made a claim for money damages from JSU officials or former officials[1] in their official capacities.</u>

The Defendants continue to insist that ServPro has sued JSU officials in their official capacities for money damages. It has not. The best evidence of this apparently elusive reality is the Complaint itself. From the case caption (Doc. 1, p. 1, 2), to the descriptions of the parties and the capacities in which they are sued (Doc. 1, p. 3, 4, 5), this much should be clear. Were there any remaining doubt, the description of the relief requested distinguishes categorically between equitable relief, sought against Defendants in their official capacity, and monetary damage claims against individual capacity Defendants. (Doc. 1, p. 48, 49, 50)

ServPro has also not sued JSU in this action. Had Congress effectively abrogated JSU's 11th Amendment immunity, as it did pursuant to Section 5 of the 14th Amendment for suits under Title VII of the Civil Rights Act of 1964 or by its spending power required JSU's waiver of immunity in exchange for receipt of federal funds as it did with Section 504 of the Rehabilitation Act of 1973, and Title IX of the Education Amendments of 1972, JSU could easily find itself sued in this

---

[1] By operation of Rule 25(d) James Brigham, former Vice President for Finance who was apparently removed last year from his job at JSU should be replaced as an official capacity defendant by his successor. The claims against him in his individual capacity continue. To facilitate the substitution, ServPro has requested the identification of Brigham's successor but has received no information in response. USCS Fed Rules Civ Proc R 25

Court as it has been repeatedly before.[2] *See*, Saeki v. Jacksonville State Univ., No. 1:20-CV-0857-CLM, 2021 U.S. Dist. LEXIS 115116 (N.D. Ala. June 21, 2021), Champagne v. Jacksonville State Univ., No. CV 08-RRA-1857-E, 2011 U.S. Dist. LEXIS 168273 (N.D. Ala. Jan. 13, 2011); Collins v Jacksonville State University, 2008 U.S. Dist. LEXIS 129143; Green v Jacksonville State University, 2017 U.S. Dist. LEXIS 86453; Vaughn v Jacksonville State University, 2015 U.S. Dist. LEXIS 96508.

As this Court explained in Saeki, through abrogation and waiver, state agencies like JSU can lose the 11th Amendment civil immunities they otherwise enjoy. In the absence of either effective abrogation or waiver[3], the Court retains jurisdiction of suits against state officers in their official capacities for prospective injunctive relief, "…the Eleventh Amendment does not bar suits against a state official in his official capacity for injunctive relief to end violations of federal law." Saeki v. Jacksonville State Univ., No. 1:20-CV-0857-CLM, 2021 U.S. Dist. LEXIS 115116, at *6 (N.D. Ala. June 21, 2021). JSU's 11th Amendment immunity

---

[2] Even had Congress intended to abrogate 11th Amendment immunity, ever since Seminole Tribe of Florida v Florida, 517 U.S. 44 (1996) the Court has required a more direct nexus with the interests protected by the 14th Amendment for the abrogation to be effective. Because abrogation was deemed ineffective for employment discrimination claims under the ADA and the ADEA, the extent of Congress's Sec. 5 abrogation authority may be less than the reach of its waiver requirements under the Spending Power. Unless JSU has waived its immunity coincident with the acceptance of federal funds, neither is at issue here. *See*, Bd. of Trs. v. Garrett, 531 U.S. 356, 121 S. Ct. 955 (2001), Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 120 S. Ct. 631 (2000).

[3] Ordinarily Alabama state agencies like JSU do not have the capacity to waive their constitutional immunities. An exception is made for waivers made as a condition for receipt of federal funds. If the use of federal funds for JSU's recovery from the tornado were conditioned on such a waiver, it and other state agencies could appropriately be sued in cases such as this.

had been neither waived nor abrogated for Prof. Saeki's claims. Because he did not sue JSU officers in their official capacity, his suit was not within the Ex Parte Young doctrine jurisdictional exception. Ex parte Young, 209 U.S. 123, 159, 28 S. Ct. 441, 52 L. Ed. 714 (1908). Saeki v. Jacksonville State Univ., No. 1:20-CV-0857-CLM, 2021 U.S. Dist. LEXIS 115116, at *6 (N.D. Ala. June 21, 2021).

2. ServPro's Board of Adjustment Claim does not affect this Court's jurisdiction to hear this case and proves nothing relating to its merits.

To their mantra that the Board of Adjustment and not this Court was the proper and exclusive forum for this matter, the defendants have added two embellishments: that, by filing a Board claim, ServPro has somehow amended the contours of this Court's jurisdiction, and that ServPro's Board claim "…proves this matter belongs in the Board of Adjustment" [Doc. 28, p.1]. They are wrong on both counts.

a. Federal jurisdiction is established by Congress, subject to constitutional limitations and beyond the power of litigants to create or destroy.

The Defendants' original motion to dismiss was principally an attack on the jurisdiction of this Court to hear the case. The supplement to their arguments is a continuation of the same, with an added dimension. The Defendants now assert that ServPro's Board claim has somehow deprived this Court of the jurisdiction established for it by the Constitution and laws of the United States. Just as the absence of jurisdiction is not an affirmative defense that is waived lest pled, it cannot

be lost or created by litigants themselves. Valid jurisdiction remains a necessary element of all litigation that continues through all stages of a case from the filing of a complaint through final appeal. Courts retain the authority to entertain or raise jurisdictional inquiries themselves even during Supreme Court oral argument.[4] Parties can celebrate jurisdiction when it is to their advantage or regret its absence, but cannot create, destroy, or amend it. Rhetoric or persuasion will not affect it. Nor will filing a Board of Adjustment claim. As the Persian tent-maker's son observed more than a millennium ago, cautioning against the futility of regret for times past[5]:

> The Moving Finger writes, and, having writ, Moves on; nor all your Piety nor Wit Shall lure it back to cancel half a Line, Nor all your Tears wash out a Word of it. Rubaiyat of Omar Khayyam, Stanza 71.

So it is with federal jurisdiction.

  b. <u>ServPro's Board of Adjustment claim has no evidentiary effect in this case</u>

The Defendants endow ServPro's Board claim not only with the power to redraw the jurisdictional contours of this Court, but also give it evidentiary weight to "prove" that the Board and only the Board, has jurisdiction of these matters. On the contrary, both the legislation establishing the Board of Adjustment and the rules governing its proceedings recognize that lawsuits and Board claims can pertain to

---

[4] *See*, <u>Health Care Auth. for Baptist Health v. Davis</u>, 158 So. 3d 397 (Ala. 2013).
[5] At least as loosely translated by Edward Fitzgerald. In Stanza 13 the same poet advised, "Ah, take the Cash, and let the Credit go". Perhaps good advice for all dealing with JSU in the future.

related facts. It is the resolution of different claims against different parties arising from those facts over which courts and the Board share no jurisdiction.

In the creation of the Board of Adjustment, the Alabama legislature expressly recognized that issues involving the civil obligations of public entities and their officials could potentially include matters both within and outside the jurisdiction of the courts. Those within court jurisdiction are excluded from that of the Board by statute:

> The jurisdiction of the Board of Adjustment is specifically limited to the consideration of the claims enumerated in subsection (a) of this section and no others; provided, that nothing contained in this division shall confer upon the Board of Adjustment any jurisdiction now conferred by law upon the State Board of Compromise provided for in Sections 41-1-3 and 41-1-4, and *nothing contained in this division shall be construed to confer jurisdiction upon the Board of Adjustment to settle or adjust any matter or claim of which the courts of this state have or had jurisdiction. . .*
> Ala. Code 1975 § 41-9-62 (b)

By operation of state law, this Court's jurisdiction cannot coexist with the jurisdiction of the Board of Adjustment: if the Court has it, the Board doesn't. Neither ServPro nor the defendants can alter that reality.

The exclusion of all claims over which court jurisdiction exists from consideration by the Board is recognized and reflected in the formal Rules of the Alabama Board of Adjustment, (revised August 24, 2021). They provide that the Board shall not hear claims when related matters remain subject to litigation: "[N]o claim will be scheduled for hearing if litigation pertaining to the same facts is

pending in any court." Board of Adjustment Rule 22(b). In recognition of this rule and the statutory jurisdictional exclusion it reflects, in its board claim, ServPro expressly informed the Board of the pendency of this case.

## Conclusion

Both Alabama state courts and federal courts applying Alabama law have consistently recognized that civil obligations arising from the actions of state officials can be enforced through the exercise of their equitable powers, confirming this Court's jurisdiction. The pendency of a Board of Adjustment claim against JSU (which is not a party to this action) has no effect upon it.

As Justice O'Connor explained in Hafer v. Melo, 502 U.S. 21, 112 S. Ct. 358 (1991), different immunities apply to public officials when sued in their official or individual capacities. Plaintiffs designate the capacity in which defendants are sued and the relief requested from them, and defendants plead the appropriate defense. Defendants don't have the option of rewriting a complaint so that it will die at the foot of the walls of sovereign immunity at the first volley from Rule 12.

As much as the Defendants might wish that ServPro had sued JSU for a breach of contract and thus run smack into the 11th Amendment to the United States Constitution and Section 14 of the Alabama Constitution of 1901, it didn't. Instead, ServPro sued only those over whom the Court has jurisdiction, and only for the appropriate relief available from them in this forum. To the extent that JSU might

also be held to account by the Board of Adjustment for other relief, all the better. ServPro's Board claim proves only that it knows and respects the jurisdictional boundaries of both this Court and the Board, and that, as any prudent business or individual would recognize, does not foreclose relief from both.

For the reasons given above, and those made previously in response to the defendants' motion to dismiss, ServPro respectfully requests that the pending motion be denied.

Respectfully submitted:

*s/Barry W. Hair*
Barry W. Hair (ASB-8620-h40b)

*s/Brad J. Smith*
Bradley J. Smith (ASB-6847-b52s)

Clark, Hair & Smith, P.C.
1000 Urban Center Drive, Suite 125
Birmingham, AL  35242
205-397-2900
205-397-2901 – Fax
E: bhair@chslaw.com
E: bsmith@chslaw.com

# CERTIFICATE OF SERVICE

      I hereby certify that the foregoing has been served on all parties by electronic filing with the Clerk of the Court using the CM/ECF system on this the 7th day of January, 2021.

Wayne Morse
Waldrep Stewart & Kendrick, LLC
2323 2nd Avenue North
Birmingham, AL 35203
Telephone: (205) 327-8325
Email: morse@wskllc.com
*Counsel for Defendants*

Stanley J. Murphy
Murphy & Murphy, LLC
P.O. Box 3163
Tuscaloosa, AL 35403
(205)349-1444
E: murphyandmurphy@bellsouth.net
*Counsel for BWW, Inc. d/b/a SERVPRO of Birmingham*

                                      */s/Brad Smith*
                                      Of Counsel