FILED

2022 Feb-11  AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

**BWW, Inc., d/b/a/**
**SERVPRO OF BIRMINGHAM,**
    Plaintiff,

**v.**
                            **Case No. 1:21-cv-470-CLM**

**JAMES BRIGHAM, et al.,**
    Defendants.

## <u>MEMORANDUM OPINION</u>

BWW, Inc. d/b/a SERVPRO of Birmingham ("ServPro") sued several men associated with Jacksonville State University ("JSU"): President Don C. Killingsworth,  Senior Vice President for Finance and Administration and Chief Financial Officer James Brigham, and Director of Capital Planning and Facilities David Thompson (collectively, "JSU Defendants"). (Doc. 1.) ServPro seeks injunctive relief, mandamus relief, and damages from the JSU Defendants. The JSU Defendants have moved to dismiss. (Docs. 8, 25.)

For the reasons below, the court will grant the JSU Defendants' motion and (a) **DISMISS WITH PREJUDICE** ServPro's claims for prospective injunctive relief against the JSU Defendants in their official capacities and ServPro's § 1983 claims against Thompson and Brigham in their individual capacities and (b) decline to exercise supplemental jurisdiction over ServPro's state law claims. So the court will **DISMISS WITHOUT PREJUDICE** ServPro's state law claims and its claims against the fictitious defendants.

<u>BACKGROUND</u>

ServPro wants to get paid about $20 million for tornado recovery work it did for JSU. ServPro seeks payment in two places: (1) this federal court, where ServPro sued the individual JSU Defendants, and (2) the Alabama Board of Adjustments, where ServPro filed a claim against JSU.

The court first explains how ServPro ended up in two places. The court then decides whether ServPro can stay here.

**A. Tornado Cleanup**

An F3 tornado hit the main JSU campus in March 2018. It damaged many buildings. To help clean up, Thompson (JSU's Facilities director) negotiated and executed the Disaster Recovery Authorization and Service Contract ("Contract") with ServPro for disaster recovery and restoration services. The Contract set agreed-upon rates for different trades and skill levels. Later, JSU and ServPro amended the Contract to say that skilled laborers would perform all work at the appropriate rate.

Around April 2019, the State Insurance Fund stopped paying JSU for ServPro's work because of an audit that allegedly shows that ServPro engaged in gross and fraudulent billing. So JSU stopped paying ServPro in April 2019. JSU later learned that the FBI was also investigating ServPro's billing. (Doc. 1, Ex. B; *see also* doc. 1, ¶ 40.)  But ServPro says that Brigham (JSU's CFO) affirmed JSU's continuing obligation to pay ServPro in August 2019. So ServPro kept working at JSU despite not being paid.

Then, in December 2020, JSU sent a letter that told ServPro that JSU would not make further payments until two things happened: (1) the State of Alabama determined that ServPro's charges were legitimate and that the State Insurance Fund would reimburse JSU for ServPro's invoices; and (2) the FBI concluded its investigation into ServPro's alleged overbilling. (Doc. 1, Ex. B; doc. 1, ¶ 46.)

## B. Federal Lawsuit

ServPro filed this lawsuit against the individual JSU Defendants— not the University itself—a few months later. In it, ServPro alleges that the individual JSU Defendants have violated the U.S. Constitution and other federal laws, *see* 42 U.S.C. § 1983, and violated parts of Alabama constitutional, statutory, and common law. ServPro asks for a mandatory injunction that would force the JSU Defendants to force JSU to pay ServPro and for compensatory and punitive damages.

The JSU Defendants moved to dismiss all claims against them. (Doc. 8). Among many things[1], the JSU Defendants argued that the Alabama Board of Adjustment has exclusive jurisdiction over the contractual dispute between JSU and ServPro, and this lawsuit was a ruse to escape immunity problems and the Board resolving the dispute. (Doc. 9 at 4-19). ServPro responded that the Board can only take cases if sovereign immunity prevented the case being litigated in court. (Doc. 16 at 27-28). And because ServPro properly sued the individual JSU Defendants here, the Board doesn't have jurisdiction. (*Id.*)

## C. The Alabama Board of Adjustment

Yet ServPro then filed a $20 million claim against JSU and other state agencies with the Board of Adjustment. (Doc. 27 at 9-15). ServPro told the Board about this federal case and said that it understood the Board's rules prevented the Board from ruling on its claim against JSU until this court decides the case against the individual JSU Defendants. (*Id.* at 9-11).

---

[1] The court agrees with the JSU Defendants that ServPro's Complaint is a shotgun pleading that violates both the Federal Rules of Civil Procedure and Eleventh Circuit precedent. FED. R. CIV. P. 8(a)(2); FED. R. CIV. P. 10(b); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018); *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). But the court will dismiss ServPro's Complaint on other grounds that promptly end this case, so the court needn't give ServPro a chance to remedy the pleading deficiencies. *See Jackson*, 898 F.3d at 1358–59.

## STANDARD OF REVIEW

In considering the JSU Defendants' Rule 12(b)(6) motion to dismiss, the court accepts the factual allegations in ServPro's Complaint as true and construes them in the light most favorable to ServPro. *Lanfear v. Home Depot, Inc.*, 697 F.3d 1267, 1275 (11th Cir. 2012). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations," but does demand more than "an unadorned, 'the-defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. The Complaint's assertions must find support through further "factual enhancement." *Id.*

The ultimate question is whether ServPro's allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Id.* at 678–79. If the facts as pleaded could entitle ServPro to relief, then the court must deny the JSU Defendants' motion to dismiss. If, however, the court accepts ServPro's pleaded facts as true, and ServPro still would not be entitled to relief, then the court must grant the motion. The court will consider the Complaint, ServPro's notice that it filed a claim before the Alabama State Board of Adjustment,[2] the parties' briefs on the motion to dismiss, and the parties' briefs on the supplement to the motion to dismiss.

---

[2] The court can consider an extrinsic document that is a public record—like ServPro's notice that it filed a claim before the Alabama State Board of Adjustment—in ruling on motions to dismiss. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider.").

<u>DISCUSSION</u>

The JSU Defendants seek dismissal on several grounds. Two of them would dispose of the case without further proceedings:

- *Option A*: Rule that the Alabama Board of Adjustment has exclusive jurisdiction over ServPro's claim.

- *Option B*: Rule that ServPro has not, and cannot, plead a viable claim against them under federal law and thus this court lacks subject matter jurisdiction.

Option A would require this federal court to opine on state law issues like the Board's jurisdiction, § 14 of the Alabama Constitution, and state-agent immunity. Option B focuses solely on federal issues. Principles of federalism thus suggest the court avoid Option A if it can.

So that's what the court does. As explained below, ServPro has not pleaded viable claims under § 1983 against the JSU Defendants, and has not given good reason to exercise supplemental jurisdiction over its state law claims, so this court lacks jurisdiction.

## I.    ServPro fails to plead a viable federal claim.

The parties are not diverse, so ServPro relies on its pleading of a federal question to give this court jurisdiction under 28 U.S.C. § 1331. (Doc. 1, ¶ 1). The only federal claim in ServPro's complaint is a violation of 42 U.S.C. § 1983, which allows ServPro to sue state agents who violate ServPro's federal constitutional or statutory rights. (Doc. 1, ¶¶ 103-117). ServPro alleges that the JSU Defendants violated three constitutional provisions: the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Contracts Clause of Article I, § 10 of the United States Constitution. (*Id.*). But before the court decides whether any of ServPro's federal claims are viable, the court must decide whether the JSU Defendants are immune from them.

## A. Immunity Issues

ServPro sued all three JSU Defendants in their official capacity, and it sued Defendants Brigham and Thompson as individuals. The JSU Defendants argue that they have sovereign immunity in their official capacity and that Brigham and Thompson have qualified immunity from suit as private individuals. The court addresses both arguments in turn.

### 1. Sovereign Immunity

The Eleventh Amendment bars lawsuits "against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (citing *Hans v. Louisiana*, 134 U.S. 1, 18–19 (1890)); U.S. CONST. amend. XI. This amendment also protects "state officials sued in their official capacity." *Harbert Int'l*, 157 F.3d at 1277 (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). But there are exceptions to Eleventh Amendment sovereign immunity:

> (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court, (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so, and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law.

*Harbert Int'l*, 157 F.3d at 1278 (internal citations removed).

Both parties rely on this language from *Harbert Int'l*. The JSU Defendants argue that ServPro's equitable claims are barred by sovereign immunity because the claims are really claims against the State. (Doc. 9, p. 19.) ServPro responds that: (1) it has not sued the State here—the claim against the State (JSU) is now before the Board of Adjustment—and (2) its claims against the JSU Defendants in their official capacities are exempt from the sovereign immunity bar under the prospective-injunctive-relief exception because ServPro is seeking equitable relief to

prevent ongoing unconstitutional violations of the Fifth Amendment, Fourteenth Amendment, and Article I § 10 of the Constitution of the United States.

And both parties are right, at least somewhat. The JSU Defendants are right that ServPro's claims against them are really against the State because the injunction that ServPro seeks would ultimately require the State (JSU)—not the individual JSU employees—to pay ServPro. *See Harbert Int'l*, 157 F.3d at 1278. But at least on its face, ServPro's requested injunctive relief fits within the exception for "prospective injunctive relief to end a continuing violation of federal law." *Id*. So the court finds that, at this pleading stage, sovereign immunity does not bar ServPro's claim for injunctive relief against the JSU Defendants in their official capacities.

### 2. Qualified Immunity

Qualified immunity protects government officials from being sued in their individual capacities so long as "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Eleventh Circuit applies a two-part test to determine whether a government official is entitled to the defense of qualified immunity. "First, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." *Harbert Int'l*, 157 F.3d at 1281 (citations omitted).

Brigham and Thompson both claim to have acted within their discretionary authority when they entered contracts, sought reimbursements, processed invoices, and decided on paying contractors. The court agrees. So ServPro must show that Brigham and Thompson's conduct violated clearly established federal law. But as shown below, even

taking the factual allegations in the Complaint as true and construing them in the light most favorable to ServPro, ServPro fails to show that Brigham and Thompson's conduct violated any federal law, let alone a clearly established federal law.

## B. The Merits

Again, ServPro alleges three constitutional violations: (1) the Takings Clause of the Fifth Amendment, (2) the Due Process Clause of the Fourteenth Amendment, and (3) the Contracts Clause of Article I, § 10 of the United States Constitution. The court addresses each in turn.[3]

### 1. The Takings Clause (Fifth Amendment)

The Takings Clause states, "[P]rivate property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. Takings Clause violations usually arise in one of two situations: (1) "[w]here the government authorizes a physical occupation of property"; or (2) where the government has regulated the use of property in a way that "unfairly single[s] out the property owner to bear a burden that should be borne by the public as a whole." *Yee v. City of Escondido*, 503 U.S. 519, 523 (1992). To succeed under the Takings Clause, a plaintiff must show "that he possesses a 'property interest' that is constitutionally protected" and that the "deprivation or reduction of that interest constitutes a 'taking.'" *Keane v. Jacksonville Police Fire & Pension Fund Bd. Of Trs.*, 775 Fed. Appx. 496, 499 (11th Cir. 2019) (quoting *Givens v. Alabama Dep't*

---

[3] The JSU Defendants asked the court to find that ServPro abandoned all claims that it did not address in its response brief to their motion to dismiss. But "at the motion to dismiss stage, the scope of a court's review must be limited to the four corners of the complaint." *Boyd v. Peet*, 249 F. App'x 155, 157 (11th Cir. 2007) (citing *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). ServPro does not abandon its claims by "failing to adequately address them in [its] response brief. The appropriate inquiry at this stage of the litigation [is] whether the allegations of the complaint plausibly indicate that [ServPro] has a claim for relief." *Id.* Having determined that ServPro did not abandon its claims, the court will now determine whether ServPro's individual claims against Thompson and Brigham can proceed on the merits.

*of Corr.*, 381 F.3d 1064, 1066 (11th Cir. 2004)). "Where a party's rights were 'voluntarily created by contract' with a government, 'interference with such contractual rights generally gives rise to a breach claim not a taking claim.'" *Keane*, 775 Fed. Appx. at 499 (quoting *Baggett Transp. Co. v. United States*, 969 F.2d 1028, 1034 (Fed. Cir. 1992)).

ServPro voluntarily entered a contract with JSU to provide tornado-recovery services. So ServPro cannot pursue a takings claim. Instead, ServPro can pursue the "'range of remedies associated with vindication of a contract,' such as a breach-of-contract claim" before the Alabama Board of Adjustment. *See Keane*, 775 Fed. Appx. at 499 (quoting *Castle v. United States*, 301 F.3d 1328, 1342 (Fed. Cir. 2002)).

### 2. The Due Process Clause (Fourteenth Amendment)

"A § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Keane*, 775 Fed. Appx. at (citing *J.R. v. Hansen*, 803 F.3d 1315, 1320 (11th Cir. 2015)). If Alabama state law affords a plaintiff "sufficient opportunity to pursue [its] claim, . . . the [state] statutory scheme does not deprive [the plaintiff] of its claim for payment without due process of law." *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 195 (2001).

ServPro argues that conflicting Alabama statues, administrative codes, practices, and polices render ServPro without an effective civil remedy. Yet ServPro has a claim pending before the Alabama Board of Adjustment. And if that fails, ServPro can seek mandamus or relief through Alabama State courts. So this claim fails.

### 3. The Contract Clause (Article I, Section 10)

The Contract Clause of Article I, Section 10 reads, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. CONST. art. I, § 10. To evaluate claims brought under the Contract Clause,

the court must ask "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). Even if the court finds that a law or regulation substantially impairs a contractual relationship, the court will still uphold the law or regulation if it "serves a significant and legitimate public purpose, is based on reasonable conditions, and is appropriate to the public purpose justifying its enactment." *Taylor v. City of Gadsden*, 958 F. Supp. 2d 1287, 1334 (N.D. Ala. 2013), *aff'd*, 767 F.3d 1124 (11th Cir. 2014) (citing *Davken v. City of Daytona Beach Shores*, 366 Fed. App'x 40, 41 (11th Cir. 2010)). The Eleventh Circuit provided instruction for how courts should determine "whether legislative action qualifies as a breach of contract or an impairment of contract." *Taylor v. City of Gadsden*, 767 F.3d 1124, 1136 (11th Cir. 2014). According to the Eleventh Circuit, legislative action qualifies as breach of contract if it "leaves the promisee with a remedy in damages" and qualifies as an impairment of contract if it "extinguishes the remedy." *Id.* (quoting *Horwitz–Matthews, Inc. v. City of Chicago,* 78 F.3d 1248, 1250 (7th Cir.1996)).

The parties agree that ServPro and JSU were in a contractual relationship. But ServPro cites no law or regulation that changed after it entered the contract with JSU to perform tornado-recovery services that substantially impaired the relationship. Instead, ServPro alleges that the JSU Defendants refused to take actions to ensure that JSU paid ServPro for work performed under the Contract. Further, ServPro can still seek a remedy of damages through its claim with the Board of Adjustment. Because ServPro's Complaint does not include allegations to support each element of a Contract Clause claim and does not support that a legislative action extinguished its remedies, this claim cannot survive Rule 12(b)(6) scrutiny.

———

To sum up, none of ServPro's § 1983 claims can entitle ServPro to relief. And re-pleading the complaint cannot fix the deficiencies with each claim. Or, in legal terms, an amendment would be futile. So the court will dismiss ServPro's § 1983 claim with prejudice.

## II. The court will not exercise supplemental jurisdiction over the state law claims.

That leaves ServPro's state law claims. (Doc. 1, ¶¶ 118-51). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). The court feels particularly encouraged to dismiss the state claims here because they likely turn on thorny issues of Alabama law, such as state-agent immunity. These state law issues are best left for state courts to decide. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.").

Plus, ServPro has a pending claim before the Alabama Board of Adjustment that ServPro asked the Board to hold until this court resolved this case. (Doc. 27 at 9-15). Refusing to exercise jurisdiction over ServPro's state law claims will thus hasten the Board's decision on ServPro's contract claim against JSU. So the court will dismiss ServPro's state law claims without prejudice under 28 U.S.C. § 1367(c).

## III. The court dismisses claims against the fictitious defendants.

In its Complaint, ServPro also sues Fictitious Defendants A-Z. (Doc. 1.) "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).

ServPro has not given the court good reason to make an exception here, particularly when ServPro has failed to plead a viable federal claim that gives this court subject matter jurisdiction. So the court dismisses all fictious parties without prejudice.

———

Again, the court makes no decisions under Alabama law and takes no position on whether the Alabama courts or the Alabama Board of Adjustment should ultimately decide the contractual dispute between ServPro and JSU. All this court holds is that ServPro has not pleaded a viable federal claim against JSU employees; nor can it under the facts here.

## CONCLUSION

For these reasons, the court will **GRANT** the JSU Defendants' motion to dismiss on all counts. (Docs. 8, 25.) The court will **DISMISS WITH PREJUDICE** ServPro's federal claims and **DISMISS WITHOUT PREJUDICE** ServPro's state law claims and its claims against the fictitious defendants. The court will enter a separate order that carries out this opinion.

**DONE** on February 11, 2022.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

12